UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States | *  <br> *   07cr339 (JDB) <br> * |
| Vs. | * <br> * <br> * |
| Joseph Winstead | * <br> * |

## Memorandum in Aid of Sentencing

On 2/13/08, Mr. Winstead pled guilty to one count of mail fraud which was Count One in the indictment of the above captioned case. The conduct involved submitting false attendance records as to jury service through the mail which is indicated in the factual proffer which has been accepted by the defendant.

Mr. Winstead is a 52 year old college graduate who has never before had any criminal interaction with the justice system at all. He worked for the US Postal Service for nearly 30 years without incident prior to this case. Mr. Winstead's father passed away in 2000 from throat cancer and he lost his grandmother to dementia, with whom he was very close, in 2004. At this time, Mr. Winstead began to experience severe depression regarding his personal loss. His depression was so great that eventually he could not get out of bed even while medicated. He used nearly all available leave from his job at the Postal Service under these circumstances. At the same time, Mr. Winstead became involved as a juror in the case of <u>United States v. Kevin Gray</u>. He became the subject of newspaper articles as a lone holdout juror in the case who was eventually removed. Mr. Winstead has always gone to church. He has no substance abuse history.

The defense would submit that Mr. Winstead is a good person that, sadly, fell from grace. However, while this may provide context for his actions in this case, he understands that the context simply does not excuse the conduct. That said, the court has before it a plea agreement in this case where paragraph #4 indicates where the parties have agreed that a guideline sentence in this case is reasonable. Paragraph 53 of the pre-sentence report is correct in stating that the guideline in this case would be an offense level 11 with a Criminal History Category #1. That places the offense in Zone C of the sentencing table with a range of 8 to 14 months. Pursuant to USSG §5C1.1(d)(1) and (2) the guidelines allow community confinement or home detention in place of imprisonment provided that at least half the minimum term is satisfied by a sentence of imprisonment. In contrast to this approach, the plea agreement in paragraph #6 addresses the law concerning how the guidelines are non-mandatory. This can be interpreted by the idea that there are other sentences in addition to the guideline sentence in paragraph #4 that would also be reasonable in this case. This approach emphasizes the decision for the court as to whether, as stated in paragraph 71 of the pre-sentence report, a variance, a non-guideline sentence, under 18 USC §3553 is warranted. These approaches would seem to sum up the different paths concerning how the law would allow the court to approach sentencing in this case.

The defense would submit that Mr. Winstead is virtually certain to never engage in conduct like this or any criminal conduct ever again. The clumsiness of his actions underscore his state of mind while engaging in the conduct This experience has been a total disaster for him and he feels deep remorse. He has arranged to provide a lump sum to start paying all this back immediately if the court would find this to be important. It is

probably obvious that his request would be to start with such a lump sum and continue to work while serving a sentence that varies from the guidelines due to their non-mandatory nature. At the same time, he is fully aware that the court must consider a sentence to reflect the seriousness of the offense. He is prepared to respect and honor the final judgment of the court in this regard.


Respectfully Submitted

Paul D. Hunt
Attorney for Mr. Winstead
4614 Wissahican Ave.
Rockville, MD  20853
Fed. Bar #447182
Phone:  202-463-1964

**MONSIGNOR JOAQUIN BAZAN**

Jeanne Jugan Residence
Little Sisters of the Poor
4200 Harewood Road, NE
Washington, DC 20017-1554

(202) 635-2574

March 16, 2008

To whom it may concern:

My name is Joaquin Bazan, Monsignor Joaquin Bazan. I was born in S.E. Washington DC, In 1956 I graduated from College and little Joseph was a small baby as the Winsteads moved into their beautiful home at Sixth and Franklin Streets, N.E.

## MONSIGNOR JOAQUIN BAZAN

Jeanne Jugan Residence
Little Sisters of the Poor
4200 Harewood Road, NE
Washington, DC 20017-1554

(202) 635-2574

To my knowledge no one in the Winstead family is Roman Catholic but I am writing this letter on Joseph's behalf. For six years I was a Trustee for the D.C. Public Defender's Service Board. For two years I was second in charge of the Board.

**MONSIGNOR JOAQUIN BAZAN**   Page four

*Jeanne Jugan Residence*
*Little Sisters of the Poor*
*4200 Harewood Road, NE*
*Washington, DC 20017-1554*

(202) 635-2574

In the year 2000 and Joseph's father died.

In the year 2004 Joseph's grandmother died. She had lived with Joseph's mother at Sixth and Franklin Streets NE.

Joseph has no children. Born as the middle child with two lovely sisters. Now Joseph lives in S.E. Washington.

Page Five

**MONSIGNOR JOAQUIN BAZAN**

*Jeanne Jugan Residence*
*Little Sisters of the Poor*
*4200 Harewood Road, NE*
*Washington, DC 20017-1554*

(202) 635-2574

He is 52.

My plea for him is probation — He has been humiliated. It is a non-violent crime. It is an isolated first time offence.

He may lose his home. He will never do it again.

Sincerely Yours,
Monsignor Joaquin Bazan

**U.S. Department of Labor**     Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210



Your Honor,

My name is Willie M. Alexander, currently serving as Acting Director of the U.S. Department of Labor, Civil Rights Center (CRC).

It is with a sense of sadness and awkward exigency that I am compelled to submit this letter on behalf of Mr. Joseph Winstead. The awkwardness exists because I don't know Mr. Winstead personally and it is indeed a challenge to speak about a man's character when you have never met the man. I have, however, known for years and currently work with his mother, Ms. Lillian Winstead, and sometimes you can glean information about a person's character by understanding the character of their parents. I know Mr. Winstead's mother to be a fine upstanding morally fit person of impeccable character and substance. She brings these sterling attributes to her job where she serves as the Department of Labor's EEO Coordinator, responsible for ensuring that the Department's 15,000 employees are appropriately counseled on their EEO rights respecting their discrimination concerns. She maintains confidentiality and imbues all with whom she works with her omnipresent sense of integrity and trust. Ms. Winstead is an outstanding CRC employee and there is no reason to believe that she did not bring to bear in raising Mr. Winstead and her other two children the same sterling attributes exhibited on her job. Thus, it would be unjustly unfair to assume that Mr. Winstead is devoid of the same attributes of character as his mother because of his one, albeit, very serious act of poor judgment. Mr. Winstead has never been in trouble before and this act of poor judgment is not endemic of his total character, but rather an inexplicable aberration that unfortunately denigrated him as a man and diminished both the indomitable and love laden efforts of his parents to raise him to be a good man. Ms. Winstead has recounted to me how that during every waking hour her son displays the morose sadness of a man consumed with remorse and who wishes he had an opportunity to do it all over again and exercise judgment that would honor his parents as well as himself.

It is in this context that I pray you show leniency toward Mr. Winstead at sentencing, he is a good man who showed poor judgment alien to his character.

Sincerely,

Willie M. Alexander
Acting Director
Civil Rights Center

TO WHOM IT MAY CONCERN

                        RE: Joseph S. Winstead

Joseph was the second of three children born to my husband and me. From the time they were babies until each graduated from high school and college, my husband and I did our upmost to instill in each high moral character and values which would sustain them a lifetime. As the only son, Joseph was given extra attention by his father and me since we did not want him to become overly involved with those youngsters whose parent(s) may not have been as concerned as we attempted to be.

Joseph was never a problem child. He and his father would attend little league baseball games and Joseph won a trophy (which proudly sets on my china closet) for his playing skills. Joseph has been working since he was fourteen (14) years old. When he graduated from McKinley Technical High School, he received an award for Perfect Attendance for two years. He then graduated from Federal City College (now University of the District of Columbia), while continuing to work. When Joseph became a man, he moved into his own apartment, after which he bought his own home.

His father was gravely ill with cancer for two years, prior to his death in June 2000. During this period, Joseph was consumed with grief as was all the family because we were and remain a close-knit family. Joseph would visit his father almost daily while he was hospitalized. Joseph helped me with all the funeral arrangements and even wrote and read a special poem honoring his father, whom he idolized, during the ceremony.

On August 15, 2004, my Mother, who had lived with us for years, died. She would take our children to Sunday School during their formative years, which helped instill Christian values in them which we felt were so important. Joseph and all of us loved "Gramps" and my husband and Mother's deaths have been extremely stressful for Joseph and the rest of the family. Joseph again was right there for me to help with all of the final arrangements.

Since I now live alone, Joseph is very concerned about my welfare and comes over every Monday to carry out my trash and to see that I am stocked with bottled water or any other items I might need. I plea that Joseph will not be taken away from me as I will be even more devastated than I am now. Joseph sincerely regrets his mistake and is so remorseful for having done so.

Sincerely,

Lillian D. Winstead
Mother

SYLVIA J. BAZAN<br>
7501 Knightsway Avenue, NW<br>
Albuquerque, New Mexico 87120

15 March 2008

To Whom It May Concern:

I met Joseph's mother, Lillian Winsted, in 1963 when I began working at the Solicitor's office at the Department of Labor. Lillian was my Supervisor. I had so much admiration and respect for her as did everyone in the office and soon we became friends.

She spoke about her children quite often and shortly thereafter I had the pleasure of meeting all three children: Pam, Joseph, and Karen. Joseph and his two sisters have been exemplary young people as long as I have known them and this is not surprising to me because they were raised with strong values by two of the most exemplary people I know. After Joseph's father died, had some trouble adjusting to the death. He has since come to terms with his loss and is again doing very well.

I can speak very reliably about Joseph's good character throughout his life and am happy to do so.

Sincerely,

Sylvia J. Bazan

March 27, 2008

To the Judge:

I am writing this letter in support of my brother, Joseph S. Winstead. My brother, sister and I were raised by hardworking parents. My parents instilled a strong work ethic in all of us. To this end, each one of us has always held a steady job and managed to be independent. Not only did my parents instill a strong work ethic, but they also instilled a strong moral and ethical code in us.

The situation my brother is in has devastated my family. I feel my brother is very remorseful about his situation. My brother has worked since the age of fourteen and worked steady jobs since that time. My father passed away some years ago leaving my mother, my brother and sister and myself. As a family we were fortunate not to have experienced many of the tragedies felt by a lot of families in the community, so my father's sudden and painful illness took us by surprise. My brother was consistently and constantly by father's bedside. I feel my father's death had a profound impact on my brother because of the closeness of their relationship. Since my father's death my brother has had to assist my mother with many of the duties that were once my father's.

Your honor, I am asking that you show my brother leniency. My brother has always been an upstanding citizen, who, until now never committed a crime. The impact this has had on my family, especially my mother, as well as him (possible job loss after 20 + years of service), has humbled all of us especially him and caused him to reexamine the poor choices he made in the past.

Sincerely,

Pamela Y. Holmes

3/23/08

To Whom It May Concern:

I'm writing to you to please show leniency regarding sentencing my brother, Joseph Zinstead. He has always been kind and helped me when asked. He has been a thoughtful person, always remembering holidays and birthdays, even my daughter's birthday.

I have been a single mother for the last 7 years. My brother Buzz (his nickname) has always given my daughter Sydney educational gifts and stresses the importance of school to my daughter. At Xmas he always takes the time to put together any bikes or toys he has bought.

Since our father died, Buzz has been a male role model for the family. He always helps my mother when she asks. He takes out the trash for her every week and makes sure she has bottled water. I know he can't be absolved of his crime, but please don't sentence him

to jail time. He is a hard working man and should be given the opportunity to repay any monies owed to the Post Office. He has pleaded guilty and he understands the severity of his actions. Give him the ability to make restitution without being a burden on the taxpayers. Thank you for reading my letter.

Karen Hopstead
(sister)